An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-862

Filed 18 June 2025

Henderson County, Nos. 23 JT 000010-440 & 23 JT 000011-440

IN THE MATTER OF:
W.G.T., M.V.T.

Appeal by Respondents from judgment entered 16 May 2024 by Judge D. Abraham Hudson in District Court, Henderson County. Heard in the Court of Appeals 23 April 2025.

*Parent Defender Wendy C. Sotolongo, by Senior Assistant Parent Defender J. Lee Gilliam, for Respondent–Appellant Mother.*

*Miller & Audino, LLP, by Attorney Jeffrey L. Miller, for Respondent –Appellant Father.*

*Henderson County, by Deputy County Attorney Sara Harrington Player, for Petitioner–Appellee Henderson County Department of Social Services.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Attorney J. Mitchell Armbruster, for Guardian ad litem–Appellee.*

MURRY, Judge.

Rebekah L. Cantrell (Mother) and William T. Teague, Jr. (Father) (collectively, "Respondents") appeal from an order terminating their parental rights to their minor

children, W.G.T. (Wendy) and M.V.T. (Matt).[1] For the reasons below, this Court affirms the order.

## I.    Background

Mother and Father had been addicted to methamphetamine and other drugs since at least 2014, to the point that their habit impacted the health and safety of their children. After Mother suffered an episode of meth-induced psychosis on 27 January 2023, the Henderson County Department of Social Services (HCDSS) took temporary custody of the children. On 30 January 2023, the trial court entered an order for nonsecure custody and placed the children with their maternal grandmother and step-grandfather (collectively, "the Grandparents"). On 2 May 2023, the trial court adjudicated both Wendy and Matt to be "neglected juveniles" within the meaning of N.C.G.S. § 7B-101. N.C.G.S. § 7B-101(15) (2023) (defining "neglected juvenile"); *see id.* § 7B-1111(a)(1) (termination authority). On 6 April 2023, the trial court then found "clear and convincing evidence" to award legal custody of the children to HCDSS and expressly authorized HCDSS to place the children with maternal grandmother pending final determination of their best interests under N.C.G.S. § 7B-1110. *See id.* §§ 7B-1110(a)(1)–(6), -1111(b) (specifying applicable disposition factors and evidentiary standard). To achieve reunification, Respondents

---

[1] In accordance with North Carolina Rule of Appellate Procedure 42(b), we refer to the minor children by pseudonyms to protect their identities. *See* N.C. R. App. P. 42(b).

each agreed to an HCDSS-led reunification plan that ordered them in relevant part to:

- Obtain a Comprehensive Clinical Assessment from a certified provider acceptable to HCDSS and provide the assessor with truthful information;
- Follow and successfully complete all recommendations of the assessment;
- Submit to random drug screens;
- Ensure that the living environment is free of any illegal substances and that the juveniles are not living in a residence where others in the household use or store illegal substances in the home; and
- Obtain and maintain an appropriate and safe residence for the juveniles.

(Citation modified.) Over the following year, HCDSS continued kinship placement with the Grandparents while Respondents' compliance with the plan ebbed and flowed. The trial court entered concurrent permanency planning orders as well.

HCDSS filed a motion to terminate Respondents' parental rights on 11 March 2024. After a hearing on 16 May 2024, the trial court filed an order on 13 June 2024 terminating Respondents' parental rights. The trial court made 259 findings of fact to support its conclusions, including:

83. Mother's first medical appointment for treatment was on 28 March 2023. She reported using methamphetamine the day before.
. . . .
88. On 29 May 2023, Mother told her doctor that she feels her use is worsening. She again tested positive for amphetamine and methamphetamine.
. . . .
127. HCDSS is also currently investigating the family's home but has not been allowed inside.

. . . .

208. Father was diagnosed with a mental disorder and was recommended psychological testing. He never obtained it.

. . . .

246. Mother tested positive for methamphetamine as recently as last month.

. . . .

248. Mother has not taken a drug screen for HCDSS since May 2023.

249. Father has not submitted to a single drug screen for HCDSS.

(Citation modified.) Based in part on these findings, the trial court "conclude[d] as a matter of law . . . [t]hat grounds exist for the termination of the parental rights of" each Respondent based on neglect. It further held that Respondents "willfully left the juveniles in . . . placement outside the home for more than twelve . . . months without showing . . . reasonable progress" towards remediating the removal conditions and that they willfully failed to pay a portion of the juveniles' cost of care. The trial court then determined that "terminat[ing] the parental rights" (TPR) of Respondents "would be in the best interest[s] of the juveniles," finding that:

1. Matt is seven years old and Wendy is four years old.
2. TPR would accomplish the most permanent plan for the juveniles because they cannot be adopted if the rights are intact.
3. The juveniles' adoption is highly likely because the Grandparents want to adopt them.

. . . .

6. The juveniles have a strong bond with the parents.
7. The juveniles also have a strong bond with the Grandparents. They have made a lot of progress in the home. This home is safe and appropriate, and the juveniles' needs are met there.

. . . .

12. The mother believes the maternal grandmother would take care of the juveniles and that they have made a lot of progress in her home.

- 4 -

(Citation modified.) (Citing N.C.G.S. § 7B-1111.) Based on these findings, the trial court "conclude[d] as a matter of law . . . [t]hat the termination of the parental right[s] of" Respondents to Matt and Wendy "is in the juveniles' best interest[s]." Father and Mother timely appealed on 11 and 12 July 2024, respectively.

## II.    Jurisdiction

This Court has jurisdiction to hear Respondents' appeal because the trial court entered "an[ ] order that terminate[d] [their] parental rights" to Wendy and Matt. N.C.G.S. § 7B-1001(a)(7) (2023).

## III.    Analysis

On appeal, Respondents' respective counsels ask this Court to review the record for prejudicial error because they cannot identify any "issue on which to base a meritorious argument for relief." Respondents filed one collective brief *pro se.* Both counsels have shown their compliance with the appellate requirements of *Anders v. California*, 386 U.S. 738 (1967), and *State v. Kinch*, 314 N.C. 99 (1985). As N.C. Appellate Rule 3.1 requires, they each appropriately advised their respective Respondent of their individual right to file written arguments with this Court and provided them with the necessary documentation to do so.[2] *See* N.C. R. App. P. 3.1(e).

---

[2] We have reviewed Respondents' collective *pro se* brief and decline to further address it for lack of any meritorious issues beyond their counsels' respective *Anders* briefs. Because this "appellate review of the issues set out in [a] no-merit brief" does not "hinge[ ] on whether a *pro se* brief is actually filed by a parent," we restrict our analysis here solely to the *Anders* brief. *In re L.E.M.*, 372 N.C. 396, 402 (2019).

On appeal, Respondents' respective counsels address whether the trial court erred (1) by concluding that at least one statutory ground merited the termination of their parental rights as a matter of law and (2) by finding the termination of those rights to be in the children's best interests.[3] We review *de novo* the former issue as a conclusion of law. *In re S.R.*, 384 N.C. 516, 520–21 (2023). As to the latter issue, however, we look for whether "clear, cogent, and convincing evidence" supports the trial court's findings of fact which, in turn, must support their derivative conclusions of law. *In re S.R.*, 384 N.C. 516, 520–21 (2023). We review the trial court's assessment of the best interests of the child for abuse of discretion. *Id.* The trial court neither abused its discretion nor erred as a matter of law; thus, this Court agrees with Respondents' counsels in finding no appellate merit and affirms the TPR order in all respects.

## A. Statutory Grounds

As part of a TPR proceeding's adjudicatory phase, a trial court may terminate a parent's rights to his or her child "upon a finding of one or more" specific statutory grounds. N.C.G.S. § 7B-1111(a)(1)–(11) (2023). The trial court here found in relevant part that both Mother and Father had "neglected the juveniles" and "willfully left" them in "placement outside the home for more than twelve . . . months without

---

[3] In their counsels' respective briefs, both Respondents assert that the trial court more specifically erred by basing their termination in part on their "willful[ ] fail[ures]" to provide for their children in HCDSS custody. Because the trial court found at least one ground for termination, we need not address Mother's additional argument regarding "her income and living expenses." *See* N.C.G.S. § 7B-1111 (permitting TPR "upon a finding of one *or more*" possible findings (emphasis added)).

showing . . . reasonable progress" towards "correcting those conditions which led to the[ir] removal." (Quoting N.C.G.S. § 7B-1111(a)(1)–(2).) Key findings of fact which demonstrate a lack of "reasonable progress" include both Mother and Father's failures to pay required child support and their multiple refusals to submit to drug screens for HCDSS since May 2023 or ever, respectively. Furthermore, Respondents willingly allowed the Grandparents to raise both children uninterrupted from January 2023 through the 13 June 2024 order date. Neither parent "complete[d] the[ir] . . . reunification requirements" during this time, such as "submit[ting] to random drug screens" or "maintain[ing] an appropriate and safe residence for the juveniles." Thus, this Court holds that "clear, cogent, and convincing evidence" supports the trial court's finding of statutory authority to terminate Respondents' parental rights. *In re F.G.J.*, 200 N.C. App. 681, 686 (2009) (citing N.C.G.S. § 7B-1111).

## B. Best Interests

As part of a TPR proceeding's dispositional phase, a trial court "must determine whether termination of parental rights" would be "in the best interests of the child[ren]." *Id.* (citing N.C.G.S. § 7B-1110(a)). In making this determination, the trial court must consider at least the "age of the juvenile[s]," their "likelihood of adoption," whether the TPR would help to "accomplish[ ] . . . the[ir] permanent plan," their "bond" with their parents, and the "quality of the relationship between the juvenile[s] and the proposed . . . guardian." N.C.G.S. § 7B-1110(a)(1)–(6).

Here, the trial court documented Wendy and Matt's youthful ages of minority, that their "primary plan" of adoption could not proceed "if the parents' rights are intact," that the Grandparents' desire to adopt both of them makes their adoption "highly likely," and that the "juveniles have a strong bond with" both Respondents and Grandparents. The trial court also documented other "relevant considerations," *id.* § 7B-1110(a)(6), such as the "safe[ty] and appropriate[ness]" of the grandparents' home, the juveniles' "academic[ ] and social[ ] . . . improve[ment]" since the custody change, and Mother's acknowledgement that "the maternal grandmother would take good care of" her children. Based on these considerations, this Court holds that the trial court did not abuse its discretion in finding termination of Respondents' parental rights to be in the best interest of the children.

## IV.    Conclusion

For the reasons discussed above, this Court affirms the trial court's finding that the termination of Respondents' parental rights would be in their children's best interest and its conclusion of sufficient statutory grounds to do so.


AFFIRMED.

Judges COLLINS and FREEMAN concur in the result only.

Report per Rule 30(e).